## STATE OF VERMONT

SUPERIOR COURT

CHITTENDEN UNIT

CIVIL DIVISION

Docket No. 78-1-18CnCV

PLH LLC,
APPLE HILL SOLAR LLC,
OTTER CREEK SOLAR LLC, and
CHELSEA SOLAR LLC

    Plaintiffs,

v.

THE TOWN OF BENNINGTON,
THE SELECT BOARD OF THE TOWN OF BENNINGTON,
THE TOWN OF BENNINGTON PLANNING COMMISSION,
THE BENNINGTON COUNTY REGIONAL COMMISSION,
MARY MORRISSEY,
RICHARD CARROLL,
MICHAEL KEANE,
JIM CARROLL,
DANIEL MONKS,
JANE DOE 1
and JOHN DOE 1.

    Defendants.

RECEIVED
BURLINGTON, VT

MAR 19
2:18-cv-41
CLERK'S OFFICE
U.S. DISTRICT COURT

VERMONT SUPERIOR COURT
FILED

JAN 24 2018

Chittenden Unit

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES FOR VIOLATIONS OF THE VERMONT CONSTITUTION, THE UNITED STATES CONSTITUTION, THE PUBLIC TRUST DOCTRINE, THE SHERMAN ACT, THE CLAYTON ACT, THE VERMONT CONSUMER PROTECTION ACT, AND OTHER VERMONT STATUTORY PROVISIONS, AND FOR REVIEW OF GOVERNMENTAL ACTION

NOW COMES PLH LLC ("PLH"), Apple Hill Solar LLC ("Apple Hill"), Otter Creek

Solar LLC ("Otter Creek") and Chelsea Solar LLC ("Chelsea" and together with PLH, Apple

Hill and Otter Creek, the "Plaintiffs") by way of complaint against the Town of Bennington (the

"Town"), the Town's Select Board (the "Select Board"), the Town of Bennington Planning

Commission (the "Planning Commission"), the Bennington County Regional Commission (the

"BCRC"), members of the Bennington Solar Siting Committee (the "Siting Committee") Mary Morrissey, Richard Carroll, Michael Keane, Daniel Monks and Jim Carroll (the "Siting Committee Members"), and Jane Doe 1 and John Doe 1, respectfully petition this Court for (i) injunctive relief, (ii) declaratory relief under 12 V.S.A. §4711 and V.R.C.P. 57, (iii) a review of governmental action under V.R.C.P. 75, and (iv) damages in an amount to be proved at trial.

## NATURE OF THE ACTION

1.      Fossil fuel generation not only is destroying the planet, but is responsible for the pre-mature death of countless Americans.[1]

2.      Recently, the U.S. Administration released a dire report on the prospects for the climate. *See* https://science2017.globalchange.gov/chapter/executive-summary/. USGCRP, 2017: *Climate Science Special Report: Fourth National Climate Assessment, Volume I* [Wuebbles, D.J., D.W. Fahey, K.A. Hibbard, D.J. Dokken, B.C. Stewart, and T.K. Maycock (eds.)]. U.S. Global Change Research Program, Washington, DC, USA, 470 pp, doi: 10.7930/J0J964J6. The report concludes that "[s]ea level rise will be higher than the global average on the East and Gulf Coasts of the United States." *Id.* Stronger storms will be more frequent raising the costs to recover from such storms.  The east coast, including the Northeast, in particular will see more frequent and stronger storms and hurricanes.  *Id.* at Chapter 9. https://science2017.globalchange.gov/chapter/9/. *See also*, *id.* at Fig. 9.2.

3.      Ignoring the dangers of fossil fuels and those warnings, on January 22, 2018, Bennington became the anti-solar capital of Vermont, passing changes to its Town Plan designed to stifle solar development—perpetuating our Thelma and Louise-like drive off the climate cliff.

---

[1] *See*, https://www.epa.gov/sites/production/files/2017-10/documents/ria_proposed-cpp-repeal_2017-10.pdf; https://www.washingtonpost.com/news/energy-environment/wp/2017/11/01/trumps-epa-says-obamas-climate-rule-could-prevent-up-to-4500-deaths-annually-moves-to-scrap-it/?utm_term=.f0597f004dfa.

4.     Since 2015 a small band of NIMBY (not-in-my-backyard) Bennington residents from the private Apple Hill homeowners association neighborhood, led by Defendant Richard Carroll, have co-opted the governmental power of the Town of Bennington to harm Plaintiffs' ability to lawfully develop solar projects on property in Bennington. The result has been the use of governmental power to target Plaintiffs in an unlawful, discriminatory and unconstitutional manner—culminating in Bennington's most recent anti-solar amendments to its Town Plan.

5.     The Town of Bennington now hopes to get Bennington County on board with its anti-solar and anti-climate Town Plan.

6.     Plaintiffs ask this Court to declare invalid the Bennington solar screening ordinance (the "Screening Ordinance") and the provisions of the Bennington Town Plan that restrict the development and siting of solar energy farms, and to issue a permanent injunction enjoining the same.

7.     This suit also seeks to enjoin the BCRC from taking any action to certify the Bennington Town Plan or Screening Ordinance under 24 V.S.A. §4352(b).

8.     This suit also seeks damages against the defendants for the injury suffered by Plaintiffs due to defendants' unlawful and tortious actions.

## PARTIES

9.     Plaintiff PLH is an Indiana limited liability company with its office located at 145 Pine Haven Shores, Suite 1000A, Shelburne, VT 05482. PLH owns the following real property in the Town: Property #23-50-16-00, 27.18 acres (the "Eastern Industrial RR Property"), (ii) Property #23-50-20-00, 40.6 acres (the "Western Industrial RR Property"), and (iii) Property #29-50-31-00, 27.04 acres (the "Chelsea/Apple Hill Property").

10.     Plaintiff Apple Hill is a Vermont limited liability company with its office located

at 145 Pine Haven Shores, Suite 1000A, Shelburne, VT 05482, that has proposed to develop a 2.0 megawatt ("MW") solar electric generating farm to be located on a portion of the Chelsea/Apple Hill Property that it leases from PLH (the "Apple Hill Solar Farm"). The permit for the Apple Hill Solar Farm is pending before the Vermont Public Utility Commission (the "PUC") under Docket No. 8454.

11.     Plaintiff Otter Creek is a Vermont limited liability company with its office located at 145 Pine Haven Shores, Suite 1000A, Shelburne, VT 05482, that has proposed to develop a 2.2MW solar farm to be located on a portion of the Western Industrial RR Property that it leases from PLH (the "Battle Creek 1 Solar Farm"). The Section 248 petition for a certificate of public good for the Battle Creek 1 Solar Farm is pending before the PUC under Docket No. 17-3727-PET.

12.     Plaintiff Chelsea is a Vermont limited liability company with its office located at 145 Pine Haven Shores, Suite 1000A, Shelburne, VT 05482, that has proposed to develop a 2.0MW solar farm to be located on a portion of the Chelsea/Apple Hill Property that it leases from PLH (the "Chelsea Solar Farm"). The Section 248 petition for a certificate of public good for the Chelsea Solar Farm was originally considered before the PUC under Docket No. 8302, and has been re-filed under in PUC docket 17-5024-PET.

13.     Defendant Town is a town in Vermont chartered in 1749.

14.     Defendant Select Board is the select board for the Town.

15.     Defendant Town of Bennington Planning Commission is the planning commission for the Town.

16.     Defendant the Bennington County Regional Commission was created, pursuant to 24 V.S.A. §4341, by the seventeen towns and villages it serves. It has the authority to certify the

4

Bennington Town Plan as compliant under 24 V.S.A. §4352(b).

17.    Defendants Mary Morrissey, Richard Carroll, Michael Keane, Daniel Monks and Jim Carroll are or were active members of the Bennington Siting Committee, and on information and belief, are all residents of Bennington, Vermont.

18.    Upon information and belief other yet unidentified defendants Jane Doe 1 and John Doe 1 participated in a civil conspiracy with one or more of the other defendants to violate Plaintiffs' constitutional and statutory rights, and engage in tortious conduct against Plaintiffs.

## VENUE

19.    Venue is appropriate in this Court under 12 V.S.A §402 as all Plaintiffs reside in Chittenden County.

## FACTS APPLICABLE TO ALL COUNTS

20.    In 2014 Plaintiffs proposed their first two solar farms in Bennington—the Chelsea Solar Farm and the Apple Hill Solar Farm.  All surrounding neighbors were notified of the plans for the solar farms.  The Town received and reviewed the plans for the solar farms and made no objection or comment.

21.    But then in August 2015, the NIMBY residents convinced the Select Board to hold a meeting (of which the Plaintiffs received no notice) at which false visual information was provided by Richard Carroll and others to the Select Board, resulting in the Select Board voting to oppose the Chelsea Solar and Apple Hill Solar Farms.

22.    Even when the Plaintiffs later informed the Select Board that it was relying on false information, the Select Board refused to change its position, and actively opposed those two solar farms before the PUC, which is the Vermont state agency responsible for approving the siting of solar projects. *See*, 30 V.S.A. §248.

23.    Making matters worse, the Town's actions were blatantly discriminatory as compared to the Town's actions with respect to other similarly situated solar projects located in the Town.

24.    Not satisfied with co-opting the Town to use its governmental power to target Plaintiffs' Chelsea and Apple Hill Solar Farms without any justifiable regulatory concerns with respect to the projects, the NIMBY band proceeded to take control of the Town's Siting Committee, which proceeded to develop anti-solar changes to the Town Plan.

25.    Based upon the work of the Siting Committee the Town passed the Screening Ordinance in late 2015, and made anti-solar changes to its Town Plan in early 2016 in order to target Plaintiffs, adding a provision that banned any solar farms or group of solar farms on more than 10 acres.

26.    Then in 2016 the Vermont legislature enacted 24 V.S.A. §4352 and 30 V.S.A. §248(b)(1)(C).

27.    Act 174 of 2016 established a new set of municipal and regional energy planning standards, *see* 24 V.S.A. §4352, which if met would allow those plans to carry greater weight—substantial deference vs. due consideration—in the 30 V.S.A. §248 siting process before the PUC. Meeting the standards is entirely voluntary; if regions and municipalities do not wish to update their plans, they will continue to receive due consideration in the section 248 process.

28.    On June 21, 2017, the Bennington County Regional Energy Plan (the "Regional Plan") was the first regional energy plan to be approved by the Vermont Department of Public Service ("DPS") under 24 V.S.A. §4352(a).

29.    Pursuant to 24 V.S.A. §4352(b), now that the Regional Plan has been certified by the DPS, the Select Board may submit the Energy Amendment and its Town Plan to the BCRC

for issuance of a determination of energy compliance. Under 24 V.S.A. §4352(b), the BCRC can only issue such an affirmative determination if it makes a "finding that the municipal plan meets the requirements of [24 V.S.A. §4352(c)] and is consistent with the regional plan."

30.     24 V.S.A. §4352(c) requires that a municipal plan include an energy element that has the same components as described in 24 V.S.A. §4348a(a)(3) for a regional plan and be confirmed under 24 V.S.A. §4350.

31.     24 V.S.A. §4352(c) also requires that a municipal plan must be consistent with the following, with consistency determined in the manner described under 24 V.S.A. §4302(f)(1) (the "Consistency Standards"):

A. Vermont's greenhouse gas reduction goals under 10 V.S.A. § 578(a);

B. Vermont's 25 by 25 goal for renewable energy under 10 V.S.A. § 580;

C. Vermont's building efficiency goals under 10 V.S.A. § 581;

D. State energy policy under 30 V.S.A. §202a and the recommendations for regional and municipal energy planning pertaining to the efficient use of energy and the siting and development of renewable energy resources contained in the State energy plans adopted pursuant to 30 V.S.A. §§ 202 and 202b (State energy plans); and

E. the distributed renewable generation and energy transformation categories of resources to meet the requirements of the Renewable Energy Standard under 30 V.S.A. §§ 8004 and 8005.

32.     24 V.S.A. §4352(c) also requires that a municipal plan must meet the standards for issuing a determination of energy compliance included in the State energy plans. The requirements of 24 V.S.A. §4352(c) are hereinafter referred to as the "Municipal Standards."

33.    The DPS has published "ACT 174 RECOMMENDATIONS AND DETERMINATION STANDARDS," which are the standards for issuing a determination of energy compliance included in the State energy plans, *see*, http://publicservice.vermont.gov/content/act-174-recommendations-and-determination-standards, (the "DPS Standards.")

34.    After the passage of Act 174, the Bennington Siting Committee continued to target Plaintiffs as it recommended further anti-solar changes to the Town Plan, which changes were adopted on January 22, 2018.

35.    Currently solar energy farms greater than 150 kilowatts ("KWs") are permitted Town-wide.    The anti-solar amendments to the Town Plan approved by the Planning Commission, *see* **Exhibit 1** (the "Energy Amendment"), and adopted by the Select Board on January 22, 2018, stifle solar development by designating only a limited number of parcels within the Town as "preferred sites."  If a parcel is not designated as a preferred area then the Town Plan bans the placement of solar facilities greater than 150 KWs in size on the parcel, labelling such sites as "unsuitable."

36.    Designation as a preferred area also has a positive economic consequence for those landowners.  As a municipally designated preferred area, the State of Vermont makes it easier to obtain long-term electricity off-take agreements, an essential element in the development of any solar farm.

37.    Public records requests to the Town and BCRC produced documents that show clearly that the laser-like focus of the Siting Committee's work under Act 174 was to target Plaintiffs' projects and properties. *See., e.g.,* **Exhibit 2,** which is an email from the Executive Director of Bennington County Regional Commission to the Bennington Planning Director on

8

February 9, 2017, stating that the *"narrowly targeted Chelsea/Apple Hill project parcels and the Rice Lane RR areas"* (which are Plaintiffs' Eastern Industrial RR and Western Industrial RR properties), raised "a red flag" and that more window-dressing was needed to attempt to justify why "those lots should be treated differently."

38.     The Town has refused to disclose any documents related to the 2016 Town Plan anti-solar amendment or the Chelsea and Apple Hill Solar Farms. The Town has also failed to produce any documents from members of the Siting Committee.

39.     The Energy Amendment fails to designate the Chelsea/Apple Hill Property, the Eastern Industrial RR Property, and the rural residential portion of the Western Industrial RR Property (collectively, the "Plaintiffs' Targeted Properties") as specifically preferred sites for no legitimate reason.

40.     In comparison, the Energy Amendment designates certain sites as preferred sites (*see* the Solar Siting Map included in the Energy Amendment) even though they are simply not developable for solar greater than 150 kilowatts because of ecological constraints. For example, preferred parcels 35-50-45-02 and 35-50-58-00 are unbuildable for solar because they are almost entirely a Highest Priority Surface Water and Riparian Areas and a Riparian Wildlife Connectivity area. The same thing applies with parcel 36-50-05-00 which is covered entirely by Priority Surface Waters and Riparian Areas and Highest Priority Surface Water and Riparian Areas and a Riparian Wildlife Connectivity area. Similarly, parcel 31-50-08-02 is mostly in a Highest Priority Surface Water and Riparian Areas and a Riparian Wildlife Connectivity area.

41.     Other preferred sites have similar and obvious insurmountable problems. For example, parcel 06-01-54-01 is part of a habitat block that has a threat level of 10—the highest score assigned by the Vermont Agency of Natural Resources. Parcel 18-50-07-00 is listed as

9

wetland project 2012-162 and the site for rare, threatened and endangered species ("RTE"). Parcel 18-50-08-00 also has a significant presence of RTE according to ANR.  Parcel 25-50-08-01 is bisected by a wide class 2 wetland according to ANR.  Parcel 35-50-25-00 is almost entirely either a class 2 wetland or a flood zone.  Parcel 38-50-14-02 is in a river corridor and has a significant class 2 wetland leaving little space for solar once setbacks are accounted for.  Parcel 38-50-15-00 has a river corridor, class 2 wetland (project 2015-620) and RTE.  Parcels 43-51-30-00 and 49-51-43-00 are adjacent to a river corridor, and are the site of wetlands projects 2017-258 and 2016-254.

42.     Parcel 44-50-42-00 (the Vermont Veterans Home) is part a river corridor, and mostly otherwise covered by buildings, so unless the Town is advocating for the removal of the Veterans home, there is no meaningful potential for larger scale ground mounted solar.  Parcel 58-50-79-00 is the site of wetland project 2006-208.

43.     These undevelopable sites, while selected a preferred, illustrate the lack of compliance with 24 V.S.A. §4352(c), but also show that the Energy Amendment does not select preferred and unsuitable sites through any objective analysis, but rather based upon the whims and prejudices of the Siting Committee.

44.     The selection of the preferred sites clearly demonstrates that there is no rational basis on which to exclude all the parcels that were excluded, and that there was no objective criteria used. Rather, the selection process indicates an off-the-cuff discriminatory selection.

45.     Still worse, there is no objective basis for not designating the site of the Chelsea and Apple Hill Solar Farms as specifically preferred sites. Statements from a recent email from Select Board Vice Chair Don Campbell highlights why the Chelsea and Apple Hill sites are perfect for solar:

10

the lot is small, there is no river or lake to protect, the forest is in terrible condition (basal area is so low it barely qualifies as forest in many places and it is rife with invasives), it does not connect to other conserved lands, it is not part of an animal corridor, it does not provide significant public access, it is not high quality farm land nor is it suitable for low-income housing, and is not tribal or cultural heritage land.

46.     All objective and non-discriminatory criteria would have led to the designation of the Chelsea and Apple Hill Solar Farm sites as specifically designated preferred sites. The fact that they were not further illustrates the unlawful discrimination that infected the entire process.

47.     Similarly, any objective criteria would have led to the designation of the Eastern Industrial RR Parcel as specifically preferred. The Plaintiffs' Eastern Industrial RR Parcel has no ecological constraints other than a *de minimus* area of class II wetlands. Yet that parcel, even though most of it is *industrially zoned*, is not designated as preferred. There is simply no rational basis as to why the Energy Amendment would deem that property "unsuitable" for solar energy.

48.     Still worse, the Energy Amendment designates 214 municipally owned acres in the Bennington rural conservation zone ("RCON") as preferred sites for solar, while designating all other properties in the RCON zone as unsuitable, including Plaintiffs' Chelsea and Apple Hill Solar Farm site, simply because such land is *privately owned*, creating not only an unconstitutional discriminatory preference for itself as against all other landowners, but also entering the market and then using governmental power to attempt to monopolize the market for solar facilities greater than 150kw in Bennington.

49.     The total acres designated as preferred and owned by the Town is approximately 221 acres making the Town the largest provider of solar energy sites in the Town. The Energy Amendment also designates another approximately 354 acres of preferred sites, but when a review of the suitability of those sites is actually conducted as noted above, the number of acres available for solar drops to a fraction.

11

50.     The Town is using its governmental power to not only unconstitutionally take away the property development rights currently enjoyed by Plaintiffs and others for no legitimate reason, but also to place itself in a monopoly position to prevent competition.

51.     The defendants' actions have caused and continue to cause injury to Plaintiffs.

52.     The Energy Amendment and the Town's anti-solar Town Plan and Screening Ordinance has caused and continues to cause injury to Plaintiff and threatens further injury to Plaintiffs. Classifying and threatening to classify Plaintiffs' properties as unsuitable for solar development has an immediate adverse impact on the fair market value for the properties, and impairs the Plaintiffs ability to develop solar on the properties.

## CAUSES OF ACTION

## COUNT I

### I. THE PLANNING COMMISSION'S PASSAGE OF THE ENERGY AMENDMENT IS VOID *AB INITIO* FOR FAILURE TO ADHERE TO THE REQUIREMENTS OF 24 V.S.A. §4384.

53.     Plaintiffs repeat and re-allege the allegations contained in each and every preceding paragraph of this Complaint.

54.     The Planning Commission's passage of the Energy Amendment fails 24 V.S.A. §4384 in at least three respects. *First,* the Planning Commission did not meet the notice requirements of 24 V.S.A. §4384(e). *Second*, the Planning Commission's written report did not sufficiently address the issues listed in 24 V.S.A. §4384(c)(1)-(5). *Third*, the Planning Commission made changes to the proposed amendment between the warning date and the first hearing on the amendment.

*The Plaintiffs' Multiple Requests For Notice*

55.     On April 27, 2017, Brad Wilson, a representative of the Plaintiffs, sent an e-mail

12

to the Town's Planning Director requesting information as to when the Planning Commission would meet to review the Solar Siting Guidelines and map (*see* **Exhibit 3** hereto).  Mr. Wilson also expressed the Plaintiffs' desire to participate in all stages of the process of the development and ratification of the Energy Amendment.

56.     On April 28, 2017, Mr. Wilson again sent an e-mail to the Town's Planning Director requesting notice of the public hearings on the Energy Amendment (see **Exhibit 4** hereto).

57.     On May 26, 2017, Mr. Wilson again sent an e-mail to the Town's Planning Director requesting information regarding the dates of the public hearings for the Energy Amendment (see **Exhibit 5** hereto).

58.     On August 2, 2017, Mr. Wilson again sent an e-mail to the Town's Planning Director requesting information regarding the dates of the public hearings for the Energy Amendment (see **Exhibit 6** hereto).  Mr. Wilson again expressed the Plaintiffs' desire to participate in the process.

59.     On August 28, 2017, the Planning Commission distributed a copy of the proposed energy amendment (the "Originally Warned Energy Amendment") and a copy of the corresponding written report to various statutory parties pursuant to 24 V.S.A. §4384(e) (the "August 28 Warning").  *See*, **Exhibit 7**.  The August 28 Warning set a date of October 16, 2017 for the public hearing to consider the Originally Warned Energy Amendment before the Planning Commission.

60.     Plaintiffs were provided notice of the October 16, 2017, public hearing through an e-mail sent from the Planning Director to Mr. Wilson on October 11, 2017 (*see* **Exhibit 8** hereto).

13

61.     There were not a sufficient number of members of the Planning Commission in attendance on October 16, 2017 for a quorum and, consequently, no meeting occurred.

62.     Despite the lack of a quorum, the two planning commissioners in attendance received comments from the public.    *See*, **Exhibit 9**.

63.     The Planning Commission's public hearing on the energy amendment to the Town Plan was re-scheduled for November 6, 2016, with such notice being sent to certain persons on October 30, 2017, through an email send by the Planning Director. *See*, **Exhibit 10**.

64.     As described in that October 30, 2017, email, the text of the Originally Warned Energy Amendment was changed to create a November 6, 2017 version to address community solar facilities and agricultural soils.  Thus, the text of the energy changes to the Town Plan that was presented and considered at the November 6, 2017 public hearing was different than the text of those changes that accompanied the August 28 Warning (see **Exhibit 10** hereto).

65.     Making those changes prior to the November 6, 2017, hearing and not providing a new 30-day notice violated 24 V.S.A. §4384 and long-standing guidance on the process requirements for planning commissions.  *See*, Vermont Secretary of State's web site, *Plan and Bylaw Adoption Tools*, [1] page 3 ("*No changes may be made between the time the public notice is posted/published and the public hearing.*")

66.     Further, violating 24 V.S.A. §4384(c), the Planning Commission did not revise the written report to account for the new revisions related to community solar facilities.

67.     Mr. Wilson raised various specific issues on the energy amendment in an email dated October 18, 2017, to the Executive Director of the BCRC and the Planning Director.  *See*, **Exhibit 11**.    Those comments were put into a letter and submitted at the November 6, 2017 meeting.  *See*, **Exhibit 12.**

14

68.     In an email to the Planning Director, the Executive Director of the BCRC stated: "Brad raises some interesting points for discussion. Let's review them once we get his formal statement and consider whether we need to get a legal opinion." *See*, **Exhibit 11**. But it was clear that the Planning Commission had no interest in reviewing any of Mr. Wilson's issues as the Planning Director made clear when he stated: "Brad is very self-serving and I don't want to waste any effort on trying to please him or his billionaire client."

69.     On November 6, 2017, the Planning Commission voted unanimously to pass the Energy Amendment, as revised from the Originally Warned Energy Amendment.

70.     At the November 6, 2017 hearing, Mr. Wilson made a specific request to receive listings of the criteria that were used to exclude Plaintiffs' properties from the preferred list and also asked for reconsideration for adding them as preferred sites. Both requests have been ignored.

71.     The Energy Amendment was adopted by the Select Board on January 22, 2018.

*The Notice Requirements of 24 V.S.A. §4384(e).*

72.     24 V.S.A. §4384(e) requires that strict but simple notice requirements be met before the Planning Commission has the legal authority to consider an amendment to the Town Plan.

73.     24 V.S.A. §4384(d) requires that the Planning Commission hold at least one public hearing within the municipality after public notice on any proposed plan or amendment. 24 V.S.A. §4384(e) requires that a written notice be given at least thirty (30) days prior to the first hearing to designated persons. That notice must include a copy of the proposed plan or amendment and the written report and it must either be delivered with proof of receipt, or mailed by certified mail, return receipt requested. 24 V.S.A. §4384(e)(4) includes among the persons

entitled to notice  any "business, conservation, low income advocacy and other community or interest groups or organizations that have requested notice in writing prior to the date the hearing is warned."

74.    The Plaintiffs' representative requested to be notified of the public hearings four times over a four-month period prior to the Planning Commission's issuance of the August 28 Warning. *See* **Exhibits 3 through 6.**  Brad Wilson's request for notice of changes to the Town Plan was clear in his April 27, 2017 email to the Planning Director:

> Given that we do own property in the Town and we are solar developers, I hope it is no surprise that we would like to participate in the process as that map is generated, reviewed, and ultimately approved. Would you be able to notify me of the next opportunity to do so?

*See*, **Exhibit 3** hereto.

75.    Despite the repeated requests by the Plaintiffs' representative for notice, the Planning Commission omitted the Plaintiffs from the August 28 Warning, only providing a notice on October 18, 2017.

76.    Despite having written to the Town's Planning Director on four separate occasions requesting notice of any public hearings on the Energy Amendment, the Planning Commission failed to act and failed to provide the required notice to the Plaintiffs under 24 V.S.A. §4384(e) within the mandatory time requirements.

77.    The Planning Commission also failed the notice requirements because it did not provide 30 days advance notice of the November 6, 2017, first hearing to any of the parties entitled to notice under 24 V.S.A. §4384(e).

78.    Under Vermont law, the failure to adhere to the procedural requirements of 24 V.S.A. §4384(e) causes the Planning Commission's affirmative vote on the Energy Amendment on November 6, 2017 to be void *ab initio*.

79.     Because zoning ordinances are in derogation of common law property rights, the Vermont Supreme Court insists upon strict compliance with the established procedures.

80.     Having failed to adhere to the procedural requirements of 24 V.S.A. §4384(e), the Planning Commission's vote on November 6, 2017 approving the Energy Amendment was void.

81.     The notice provided to the Plaintiffs did not allow the Plaintiffs sufficient time to adequately respond to the Energy Amendment or the ad hoc discriminatory methodology behind its drafting. Although Mr. Wilson did participate during the public hearing on November 6, 2017, the shortened notice period for such hearings was unreasonable and prejudicial to the Plaintiffs.

82.     As such, the Plaintiffs hereby respectfully request that this Court issue a declaratory judgment that the Planning Commission's November 6, 2017 approval of the Energy Amendment was void *ab initio* due to the failure of the Town to satisfy the procedural requirements sets forth in 24 V.S.A. §4384(e), and as a result the Select Board's adoption of the Energy Amendment was void.

## COUNT II

**II.     DECLARATORY JUDGMENT THAT THE ENERGY AMENDMENT AND THE TOWN PLAN'S ANTI-SOLAR PROVISIONS VIOLATE PLAINTIFFS' DUE PROCESS AND EQUAL PROTECTION RIGHTS.**

83.     Plaintiffs repeat and re-allege the allegations contained in each and every preceding paragraph of this Complaint.

84.     The Common Benefits Clause of the Vermont Constitution, which guarantees equal protection of the laws, in pertinent part, reads,

> That government is, or ought to be, instituted for the common benefit, protection, and security of the people, nation, or community, and not for the particular emolument or

advantage of any single person, family, or set of persons, who are a part only of that community...

Vt. Const., ch. I, art 7.,

85.     "The concept of government exercising its authority inequitably and without a rational basis or for the emolument of a particular group [or against a particular person] was anathema to that end." *In re Town Highway No. 20*, 2012 VT 17, P34 (2012).   Government action is judged under a "more stringent test" under the Common Benefits Clause than the United States Constitution's Equal Protection Clause's rational basis test. *Baker v. State*, 170 Vt. 194, 205 (2000).     Here the Plaintiffs' rights to equal protection and due process have been violated under the Vermont Constitution for several reasons.

86.     *First,* the Energy Amendment and the Town's other restrictions on solar discriminate based upon the size of a solar generating facility.     Discrimination against commercial development based upon its size is unconstitutional.     *See, State v. Ludlow Supermarkets, Inc.*, 141 Vt. 261, 448 A.2d 791 (1982) (invalidating a Sunday closing law that discriminated among classes of commercial establishments on the basis of their size.) The Vermont Supreme Court has declared that Article 7 "only allows the statutory classifications . . . if a case of necessity can be established overriding the prohibition of Article 7 by reference to the "'common benefit, protection, and security of the people.'" *Id.* at 268, 448 A.2d at 795. Applying this test, the Town's disparate treatment of large and small businesses fails to withstand constitutional scrutiny.

87.     *Second*, the Energy Amendment and the Town's other restrictions on solar single out solar facilities but allows every other type of electrical generation or other uses without any legitimate justification for the necessity of the disparate treatment.

88.     *Third,* the primary purpose of the Energy Amendment is to target Plaintiffs, and

18

the rest of the plan is mere window dressing. The Town's actions have not been motivated by legitimate regulatory concerns but by political pressure from neighbors.

89. *Fourth,* the Town has intentionally treated Plaintiffs' properties differently from similarly situated properties without any necessity, and indeed without any legitimate rational basis for the difference.

90. The Town's treatment of the Plaintiffs' Targeted Properties as local "constraints" unfit for preferred status is not based upon any legitimate regulatory concerns or supporting data but on political pressure from NIMBY neighbors and political allies that took over the siting process. Based on a well know bias against the Plaintiffs, the Solar Siting Committee began their mapping process by specifically identifying the Plaintiffs' Targeted Properties, by treating the properties as local "constraints" against the development of renewable energy facilities and designating them as unsuitable for solar development despite the fact that current zoning laws allow for the development of solar facilities on the properties.

91. A July 11, 2017 email exchange between the Planning Director to the BCRC Director best summarizes the mindset of the Town and the Siting Committee during the formulation of the Energy Amendment, *see* **Exhibit 13** hereto:

> **From:** Jim Sullivan [mailto:jsullivan@bcrcvt.org]
> **Sent:** Tuesday, July 11, 2017 9:50 AM
> **To:** Dan Monks <dmonks@BenningtonVT.org>
> **Subject:** RE: Renewable Energy Siting Committee
>
> I will do my best. I suggest you drill it into peoples' heads that the Act 174 plan amendment is complex and includes much more than the solar map. I really don't think most people understand that at all – and that is why they get upset with the time it is taking to put together the plan amendment. I expect we can meet your deadlines, but I would prefer it if people at the town actually paid attention to the full amendment – as I said last night, this is a comprehensive energy plan and focusing on one map, while making some people happy, obscures the more important parts of the plan. Do you think anyone (other than yourself) has read

the draft or even given a passing thought to energy conservation, transportation alternatives, or any of the other required elements of the plan?

James Sullivan

**From:** Dan Monks <dmonks@BenningtonVT.org>
**Sent:** Tuesday, July 11, 2017 10:35 AM
**To:** Jim Sullivan [mailto:jsullivan@bcrcvt.org]
**Subject:** RE: Renewable Energy Siting Committee

Hi Jim,
My intent is to drive your points home at the upcoming meetings. I have not distributed the draft amendment, as I wanted to make sure it was complete before it was widely disseminated to the public. I suspect the Planning Commission will understand the importance of a comprehensive approach. Others may never understand.

As we move through the adoption process, you and I can work to inform the Planning Commission and the Select Board of the importance of a comprehensive approach.

Thanks for all of your hard work on the amendment. Unfortunately, as long as Chelsea/Apple Hill is on people's minds, we will have difficulty focusing attention on the real issues at public meetings.
Dan

92.   *Fifth*, the Energy Amendment amounts to reverse spot zoning with respect to the Plaintiffs' Targeted Properties.

93.   *Sixth*, the Energy Amendment constitutes spot zoning with the respect to the properties that have been designated as "preferred sites".

94.   "Spot zoning" is when a municipality singles out a small parcel or perhaps even a single lot for a use classification different from the surrounding area and inconsistent with any comprehensive plan, for the benefit of the owner of the property. *Galanes v. Brattleboro*, 136 Vt. 235, 239 (Vt. 1978) ("*Galanes*"). This practice is usually condemned by the judiciary. *Id.* A similar condemnation falls upon "reverse spot zoning" or attempts by surrounding land owners

20

to get such a parcel reclassified to avoid a use permitted by existing law. *Id.* *See also* 1 R. Anderson, American Law of Zoning, § 5.05, at 244 (1968). That is exactly what occurred here as the Siting Committee intentionally targeted Plaintiffs' Targeted Properties as "unsuitable for solar" out of animus and without necessity, and indeed without any legitimate regulatory basis at all.

95. The work product and emails of the Siting Committee and the BCRC clearly show the intent of the Town (with the complicity of the BCRC) to unfairly single out the Plaintiffs' Targeted Properties for adverse treatment under the Energy Amendment without necessity to do so, and indeed without legitimate regulatory justification. *See., e.g.,* **Exhibit 12,** which is an email from the Executive Director of Bennington County Regional Commission to the Bennington Planning Director on February 9, 2017, stating that the *"narrowly targeted Chelsea/Apple Hill project parcels and the Rice Lane RR areas"* (which are Plaintiffs' properties), raised "a red flag" and that more window-dressing was needed to attempt to justify why "those lots should be treated differently."

96. The Energy Amendment and the Town's other restrictions on solar violate Plaintiffs' due process rights because the language is standard-less, and was based upon no necessity, and indeed no legitimate regulatory criteria. There are three overlapping theories under which a delegation of standard-less municipal approval power is unconstitutional: (1) a delegation of legislative power without adequate standards violates the separation of powers required by the Vermont constitution; (2) the power to grant or refuse support for permits without standards denies applicants equal protection of the laws; and (3) administration of local land use laws without standards denies landowners due process of law because it does not give them notice of what land uses are acceptable. *In re Handy*, 171 Vt. 336, 348-349 (2000).

97.    As Supreme Court aptly observed in *Handy*:

Without definite standards an ordinance becomes an open door to favoritism and discrimination, a ready tool for the suppression of competition through the grant of authority to one and the withholding from another. . . . A zoning ordinance cannot permit administrative officers or boards to pick and chose the recipients of their favors.

(internal quotations and citations omitted).

98.    Vermont courts will not uphold municipal ordinances or plans that "fail to provide adequate guidance," thus leading to "unbridled discrimination" by the reviewing court and the municipal bodies charged with its interpretation. *In re Appeal of JAM Golf, LLC*, 2008 VT 110, ¶ 13. Such standard-less discretion violates property owners' due process rights. *Id.* ¶14.

99.    "[A]ll ordinances are subject to the limits of our Constitution, and [Vermont courts] will not enforce laws that are vague or those that delegate standardless discretion to town [] boards." *Id.*, ¶ 17 (citing *Handy*, 171 Vt. at 348-49, 764 A.2d at 1237-38). "[C]ity authorities may not deny permission for a project when there is not a specific policy set forth in the plan . . . stated in language that is clear and unqualified, and creates no ambiguity. A city plan must contain "specific standards" to guide enforcement to be given regulatory force." (internal citations and quotations omitted).

100.    "[T]he absence of standards results in the exercise of discretion in a discriminatory fashion." *Handy*, 171 Vt. at 348-49. In this case, as in *Handy*, the absence of standards has resulted in the exercise of discretion in a discriminatory fashion.

101.    Similarly, because there are no specific standards in the Energy Amendment to guide enforcement, "[s]uch standardless discretion violates property owners' due process rights. *Id.*, ¶ 14it violates Petitioners' due process rights. *JAM Golf, LLC*, 2008 VT 110, ¶ 13.

102.    "We also recognize that the Legislature intended to give Municipalities flexibility

in dealing with development proposals at variance with new proposed zoning rules. But a grant of flexibility to the municipality is constitutional only if it is accompanied by some ability of landowners to predict how discretion will be exercised and to develop proposed land uses accordingly. Flexibility cannot be a synonym for ad-hoc decision making that is essentially arbitrary. We cannot ignore that in a small town environment, the people involved, and affected by, the decisionmaking process have frequently had extensive interaction with each other, and the use of flexibility may reflect that interaction rather than neutral, predictable, and universal administrative standards. Nor can we resolve the deficiency in the statute by announcing that the selectboard does not have unfettered discretion and creating a "reasonable basis" review standard. Post, at 7-8. This course of action would offend all three of the reasons why a standardless delegation is unconstitutional."

103.   For the reasons stated herein, Plaintiffs ask for a declaratory judgment that the Energy Amendment and the Town Plan's provisions restricting solar development on Plaintiffs' properties violate Plaintiffs' due process and equal protection rights.

## COUNT III

**III.  DECLARATORY JUDGMENT THAT THE ENERGY AMENDMENT FAILS TO COMPLY WITH 24 V.S.A §4352.**

104.   Plaintiffs repeat and re-allege the allegations contained in each and every preceding paragraph of this Complaint.

105.   Under 24 V.S.A §4352(d), part of the Municipal Standards includes the DPS Standards, which are "the standards for issuing a determination of energy compliance described in [§4352(c)(3)]," and the Consistency Standards.   The Energy Amendment fails to meet the DPS Standards and the Consistency Standards.

106.   If a municipality seeks to identify potential areas for the development and siting

of renewable energy resources, as the Energy Amendment does, the DPS Standards set forth a process by which that is to be done.  Specifically, pursuant to section 12A of the DPS Standards, the first step is for the municipality to collect raw data on energy potential using best available data layers (including LiDAR as appropriate).  The end result of this step is a map showing the areas of raw energy potential within the municipality.  The second step is set forth in section 12B and requires the municipality to identify known constraints which would likely cause certain areas to be unsuitable for development (e.g. vernal pools, FEMA Floodways).  Once these known constraints are identified they are then taken out of the raw energy map to form a "Secondary Resource Map".  The last step is for the municipality to identify possible constraints, which are conditions that would likely require mitigation, and which may prove a site unsuitable after site-specific study (e.g. agricultural soils, deer wintering activities, certain Vermont Agency of Natural Resources criteria).  Once these potential constraints are identified they are taken out of the Secondary Resource Map to form the "Prime Resource Map."

107.    As a starting point, the Siting Committee used the "Bennington Solar Resource Map" (the "BCRC Solar Resource Map") which designated land in the region as (i) "Prime Solar (Areas with high solar potential and no identified Constraints (Known or Possible)", (ii) "Secondary Solar (Areas with high solar potential and no Known Constraints but where at least one Possible Constraint Exits)" and (iii) Municipal Districts (Scenic, Historic, or other Design Control Districts, which may limit solar development)".  In other words, most of the work had already been done by the BCRC and the only remaining step for the Siting Committee under the Municipal Standards was to identify local known and possible constraints and back them out of the BCRC Solar Resource Map.  Rather than follow the Municipal Standards, however, the Siting Committee was determined to engage in reverse spot zoning with respect to the Plaintiffs'

Targeted Properties.

108.    The Siting Committee on February 15, 2017, created a map which identified five local "constraints" which they overlaid on the BCRC Solar Resource Map. *See*, **Exhibit 14** hereto.   These "constraints" were (1) Chelsea and Apple Hill Solar Farm Sites, (2) Zoning District Behind Home Depot, (3) Forest Zoning District, (4) Agriculture Zoning District and (5) VT Prime and State Important Agricultural Soils in the RCON District.   The first two "constraints" are the Plaintiffs' Targeted Properties and, of course, they are not "constraints" at all but simply blatant discriminatory targeting of Plaintiffs.

109.    Further local constraints were identified over the course of the next month and on March 15, 2017, another map was created by the Siting Committee which included an additional three constraints, (6) Forest Land Cover, (7) Covered Bridges ¼ Mile Buffer and (8) Scenic Viewsheds (1 Mile).   This March 15, 2017 map continued to separately identify the Targeted Properties as "constraints".   *See*, **Exhibit 15** hereto.

110.    Over the course of the next month the Siting Committee completely abandoned the DPS Standards.   Rather than continuing to back out local constraints from the BCRC Solar Resource Map, the Siting Committee chose to work backwards and simply identify what they considered to be "Preferred Solar Sites".   Instead of backing out local constraints to create a prime solar resource map as required by the Municipal Standards, the Siting Committee did the exact opposite by arbitrarily choosing "Preferred Solar Sites".   Even more troublesome than the Siting Committee completely ignoring the Municipal Standards, was their decision to label any land not designated as preferred as "unsuitable for solar development in excess of 150 KW of capacity".

111.      Specifically, the Preferred Solar Map legend states that "solar energy facilities in

excess of 150 KW of capacity shall be restricted to these sites and to building rooftops and other locations specifically identified as preferred areas for solar energy development; other sites are considered unsuitable for solar energy development in excess of 150 KW of capacity." The "preferred areas" referenced in the Energy Amendment are: (1) roof-mounted systems, (2) systems located in proximity to existing large scale, commercial or industrial buildings, (3) proximity to existing hedgerows or other topographical features that naturally screen the entire proposed array, (4) reuse of former brownfields, (5) facilities that are sited in disturbed areas, such as gravel pits, closed landfills, or former quarries and (6) areas specifically identified as suitable for solar facilities on the Solar Energy Resource Map (collectively, the "Preferred Areas"). Thus, any land that is not a Preferred Area is automatically and categorically classified as "unsuitable for solar".

112.    Not surprisingly, the backwards methodology employed by the Siting Committee resulted in an irrational, exclusionary and discriminatory Solar Siting Map. Although the Energy Amendment lists which constraints exclude a site from consideration as a Preferred Site[2], the Energy Amendment gives no explanation as to what characteristics actually make a Preferred Site "preferred". Worse still, there are a number of sites in the Town that do not include any of the Exclusionary Constraints but are inexplicably not designated as Preferred Sites, just as there a number of Preferred Sites that include one or more of the Exclusionary Constraints. All the while, the Plaintiffs' Targeted Properties continued to be intentionally excluded from the preferred site map.

113.    In summary, the Siting Committee mapping process commenced with reverse spot zoning which intentionally discriminated against the Plaintiffs' Targeted Properties and then

---

[2] The sixteen land constraints which disqualify a site from consideration as a preferred site are listed on page 23 of the Energy Amendment (collectively, the "Exclusionary Constraints")

ended with the exclusionary zoning tactic of arbitrarily designating sites as Preferred Sites and in the process completely abandoned any attempt to comply with the Municipal Standards.

114.    The Energy Amendment also fails to meet the Consistency Standards.

115.    The Energy Amendment is inconsistent with Vermont's greenhouse gas reduction goals under 10 V.S.A. § 578(a), which require the regional reduction of emissions of greenhouse gases from the 1990 baseline by 50 percent by January 1, 2028; and 75 percent by January 1, 2050.  The Town's anti-solar designation of but a handful of sites as unsuitable by the Town in conjunction with the projected limited opportunities for economically feasible development of solar facilities, makes the Energy Amendment inconsistent with the goals under 10 V.S.A. § 578(a), because the Town will not be able to meet those goals.

116.    The Energy Amendment is inconsistent with Vermont's 25 by 25 goal for renewable energy under 10 V.S.A. § 580. The Town's anti-solar designation of but a handful of sites as unsuitable by the Town in conjunction with the projected limited opportunities for economically feasible development of solar facilities, makes the Energy Amendment inconsistent with the goals under 10 V.S.A. § 580, because the Town's designations impair the achievement of those goals.

117.    The Energy Amendment is inconsistent with Vermont's building efficiency goals under 10 V.S.A. § 581, which among other things require (1) the substantial improvement of the energy fitness of at least 25 percent of the State's housing stock by 2020 (approximately 80,000 housing units), (2) the reduction of annual fuel needs and fuel bills by an average of 25 percent in the housing units served, and (3) the reduction of total fossil fuel consumption across all buildings by an additional one-half percent each year, leading to a total reduction of six percent annually by 2017 and 10 percent annually by 2025.  The Town's anti-solar designation of but a

handful of sites as unsuitable by the Town in conjunction with the projected limited opportunities for economically feasible development of solar facilities, makes the Energy Amendment inconsistent with the goals under 10 V.S.A. §581, because the Town's designations impair the achievement of those goals by preventing larger scale net-metering and distributed generation.

118.    The Energy Amendment is inconsistent with Vermont's energy policy under 30 V.S.A. §202a and the recommendations for regional and municipal energy planning pertaining to the efficient use of energy and the siting and development of renewable energy resources contained in the State energy plans adopted pursuant to 30 V.S.A. §§202 and 202b (State energy plans).

119.    In December 2015, the DPS released the latest edition of the state's Comprehensive Energy Plan ("CEP"). The CEP establishes the following goals:

a.  reduce total energy consumption per capita by 15% by 2025, and by more than one third by 2050;

b.  meet 25% of the remaining energy need from renewable sources by 2025, 40% by 2035, and 90% by 2050; and

c.  meet three end-use sector goals for 2025: 10% renewable transportation, 30% renewable buildings, and 67% renewable electric power.

120.    The Town's anti-solar designation of but a handful of sites as unsuitable by the Town in conjunction with the projected limited opportunities for economically feasible development of solar facilities, makes the Energy Amendment inconsistent with Vermont's energy policy and the CEP because it significantly impairs the achievement of those goals.

121.    The Energy Amendment is inconsistent with Vermont's distributed renewable generation and energy transformation categories of resources to meet the requirements of the

Renewable Energy Standard under 30 V.S.A. §§ 8004 and 8005. In 30 V.S.A. § 8004 the Legislature has made it clear that the policy of the State of Vermont is to encourage distributed generation projects up to 5MWs in size. The Town's anti-solar designation of but a handful of sites as unsuitable by the Town in conjunction with the projected limited opportunities for economically feasible development of solar facilities, makes the Energy Amendment inconsistent with the goals under 30 V.S.A. §§ 8004 and 8005, because the Town's designations impair, and almost completely ban distributed renewable generation and energy transformation categories of resources, and do in fact ban projects at and close to the Legislature's 5MW size. A municipal plan cannot be consistent with the Legislature's encouragement of projects of 5MWs in size when the municipal plan effectively bans all such projects.

122.    As stated above, the Energy Amendment also fails the DPS Standards. The Siting Committee inexplicably decided to abandon the DPS Standards halfway through their formulation of the Solar Siting Map. The DPS Standards, however, are not optional step in the process and the Siting Committee cannot simply ignore them as they did if the Town's goal is to have the BCRC certify the Energy Amendment.   Not only did the Siting Committee ignore the DPS Standards, they turned the standards upside down and inside out.

123.    For example, the DPS Standards state: "The Mapping standards lay out a sequence of steps for planners to examine existing renewable resources and to identify potential (and preferred) areas for renewable energy development, and to identify likely unsuitable areas for development, by layering constraint map layers on to raw energy resource potential map layers." *See* DPS Standards, page 10.    The Siting Committee did not identify potential, preferred and unsuitable areas for solar energy development by "layering constraint map layers" on the BCRC Solar Resource Map.    The Siting Committee did the exact opposite, they

arbitrarily chose the Preferred Sites and then determined that anything not within a Preferred Area is unsuitable for solar.

124.    Further, Steps 12 and 13 of the DPS Standards make it clear that when identifying known or possible constraints on renewable development, then the land use policies applicable to other forms of development in these areas must be similarly constrictive.  Said differently, the Town cannot discriminate against the development of renewable energy as compared to other types of development.  For example, if the Town wants to limit or preclude renewable energy development on property in the RCON Zone, it has to limit or preclude all development on property in the RCON Zone in the same manner.  The Energy Amendment fails this Municipal Standard because it treats renewable energy development differently than other forms of development.

125.    Continuing with the example of property within the RCON Zone, the Energy Amendment precludes the development of any solar facility in excess of 150kW in the RCON zone if such land is privately owned.  Thus, the Energy Amendment is discriminating against development of solar facilities in the RCON zone based on size and based on ownership. However, the Town allows for the development of golf courses, kennels, sawmills, colleges, cemeteries, amongst other things in the RCON zone *without regard to the size* of such developments and *without regard to whether the developments are on private or public land*. *See*, Table 3.12 of the Town's Land Use & Development Regulations (the "Land Use Regulations").   As such, the Town is treating solar development differently than other developments allowed within the RCON zone and is, therefore, violating the Municipal Standards.

126.    Another example is the "Mass and Scale" provision in the Energy Amendment

which states that "[e]xcept for projects located on preferred sites, solar facilities larger than 10 acres, individually or cumulatively, cannot be adequately screened or mitigated to blend into the municipality's landscape and are, therefore, explicitly prohibited." *See*, page 26 of the Energy Amendment. First, the assertion that facilities larger than 10 acres cannot be adequately screened is baseless. Second, there is no other provision in the Town Plan or the Land Use Regulations that limits any other type of development to 10 acres or less. Once again, on its face, the Energy Amendment is discriminating against the development of solar development in contravention of the Municipal Standards.

127. For the reasons stated herein, Plaintiffs ask for a declaratory judgment that the Energy Amendment fails to comply with 24 V.S.A §4352.

## COUNT IV

**IV.   DECLARATORY   JUDGMENT   THAT   THE   ENERGY   AMENDMENT VIOLATES 24 V.S.A. CH. 117.**

128. Plaintiffs repeat and re-allege the allegations contained in each and every preceding paragraph of this Complaint.

129. The reverse spot zoning of the Energy Amendment, which equates to the regulation of property based on the identity of the owner and not the use of the land, not only is unconstitutional, but exceeds the Legislature's grant of authority to municipalities.

130. A distinction based upon the identity of the owner rather than the public health, safety, morals, or general welfare is invalid. See *Galanes,* 136 Vt. at 240 (the power to zone requires reference to public health, safety, morals, or general welfare).

131. Here, the Town exceeded its authorization in three respects. First, the Town had a laser-like focus on Plaintiffs' Targeted Properties, and classified those properties as unsuitable based upon the identity of the owner and for no legitimate regulatory reason. Second, the Energy

Amendment disqualifies all privately-owned land in the RCON zone solely based on the identity of the owner. Third, the Town designated preferred parcels based upon the identity of the owner and for no legitimate regulatory reason

132.    Plaintiffs have been unlawfully discriminated against as compared to the Town's treatment of other landowners.

133.    For the reasons stated herein, Plaintiffs ask for a declaratory judgment that the Energy Amendment exceeds the Legislature's grant of authority to municipalities.

## COUNT V

**V.    DESIGNATING SIMILARLY SITUATED PROPERTIES AS "PREFERRED SITES" AND NOT OTHERS VIOLATES PLAINTIFFS' DUE PROCESS AND EQUAL PROTECTION RIGHTS.**

134.    Plaintiffs repeat and re-allege the allegations contained in each and every preceding paragraph of this Complaint.

135.    With respect to the designation of "Preferred Sites" for solar, Plaintiffs challenge the constitutionality of such designation in the Energy Amendment. The Town has not used any justifiable and permissible constraints in developing its list of "Preferred Sites." Moreover it has not treated similarly situated properties equally.

136.    The conscious, intentional discrimination by the Town against the Plaintiffs is readily apparent throughout the process by which the Siting Committee created the Solar Siting Map. As compared to other similarly situated landowners in the Town, the Plaintiffs were discriminated against.

137.    Moreover, in order to pass constitutional muster the municipal plan in question must be reasonably related "to public health, safety, morals or general welfare." *Galanes,* 136 Vt. at 240; *see also State v. Sanguinetti*, 141 Vt. 349, 351, 449 A.2d 922, 924 (1982) (same).

The regulatory approach taken by the Siting Committee is unreasonable, irrational, arbitrary and discriminatory and not related to public health, safety, morals or general welfare. Arbitrarily designating certain parcels within the Town as Preferred Sites for solar to the benefit of certain landowners and to the detriment of similarly situated landowners is a violation of due process and equal protection rights.

138. As convoluted and as backwards as the Siting Committee's mapping process was, the one thing that remained consistent was their inherent bias against the Petitioners and their unyielding desire to make sure the Plaintiffs' Targeted Properties would never be developed for solar. This practice of reverse spot zoning with respect to the Targeted Properties continued throughout the entire process, even when the Siting Committee decided to ditch the Municipal Standards and focus instead on identifying individual parcels as Preferred Sites. The Siting Committee started and ended the map-making process by violating the Plaintiffs' rights under the Common Benefits Clause of the Vermont Constitution.

139. For the reasons stated herein, Plaintiffs ask for a declaratory judgment that the defendants designating similarly situated properties as "preferred sites" and not Plaintiffs' properties violates Plaintiffs' due process and equal protection rights.

## COUNT VI

VI. **DECLARATORY JUDGMENT THAT THE BCRC IS REQUIRED TO ADHERE TO THE VERMONT ADMINISTRATIVE PROCEDURE ACT IN MAKING AN AFFIRMATIVE DETERMINATION OF ENERGY COMPLIANCE UNDER 24 V.S.A. §4352.**

140. Plaintiffs repeat and re-allege the allegations contained in each and every preceding paragraph of this Complaint.

141. In any determination of affirmative energy compliance conducted by the BCRC, the Plaintiffs' legal rights, duties, or privileges to develop solar farms on its property in the Town

will be determined by the BCRC.

142. Under 24 V.S.A. §4352(e) the BCRC is required to hold a hearing.

143. Under 3 V.S.A. §801(b)(2) the BCRC proceeding qualifies as a contested case entitling Plaintiffs to the procedural due process rights afforded by the Vermont Administrative Procedure Act.

144. Even if the BCRC hearing and proceedings related to an affirmative determination of the Energy Amendment were not subject to the Vermont Administrative Procedure Act, due process requires that the Plaintiffs be afforded similar protections before the BCRC can take away the Plaintiffs' valuable property rights.

145. For the reasons stated herein, Plaintiffs ask for a declaratory judgment that the BCRC is required to adhere to the Vermont administrative procedure act in making an affirmative determination of energy compliance under 24 V.S.A. §4352.

## COUNT VII

**VII. INJUNCTIVE RELIEF ENJOINING THE BCRC FROM TAKING ANY ACTION TOWARDS CERTIFYING THE ENERGY AMENDMENT OR THE SCREENING ORDINANCE UNDER 24 V.S.A. §4352.**

146. Plaintiffs repeat and re-allege the allegations contained in each and every preceding paragraph of this Complaint.

147. The Energy Amendment does not satisfy the requirements of 24 V.S.A. §4352 and is unconstitutional.

148. The unconstitutional and unlawful Energy Amendment imminently threatens Plaintiffs' constitutional and statutory rights.

149. Certification by the BCRC would itself be an unconstitutional action as it would further violate Plaintiffs' rights.

150.    Because the certification of an unconstitutional action would itself be unconstitutional, and certification would violate Plaintiffs' constitutional and statutory rights, Plaintiffs are entitled to an injunction prohibiting such action.

151.    Courts consider four factors in determining whether to issue a preliminary injunction: (1) the threat of irreparable harm to the plaintiff; (2) the potential harm to the other parties; (3) the likelihood that plaintiff will succeed on the merits; and (4) the public interest.

152.    With respect to the first factor, the threat of irreparable harm to the Plaintiffs is substantial as the Energy Amendment violates the due process and equal protection rights of the Plaintiffs.

153.    The Energy Amendment treats similarly situated properties in the Town differently by arbitrarily selecting some parcels as "Preferred Sites" for solar development and others owned by the Plaintiffs as "unsuitable" without justification and despite the fact that current zoning laws allow for the development of renewable energy facilities on such sites.  In addition, the Energy Amendment memorializes and sanctions the Siting Committee's exercise in reverse spot zoning whereby they targeted certain of the Plaintiffs' properties for discriminatory treatment in violation of the Common Benefits Clause of the Vermont Constitution.

154.    With respect to the second factor, there is no harm in having the Planning Commission reformulate the Energy Amendment in accordance with the Municipal Standards, and in a constitutional manner.  In fact, it would be to the Town's benefit as it is the Town's intent to have the Energy Amendment certified by the BCRC in order to have the Energy Amendment carry greater weight - substantial deference - in the Section 248 siting process before the PUC.  As explained herein, the BCRC would be precluded from certifying the Energy Amendment under 24 V.S.A. §4352(c)(4) because the Energy Amendment violates the

Municipal Standards in a number of ways.

155.    With respect to the third factor, there is a substantial likelihood that the Plaintiffs will succeed on the merits given how the Energy Amendment clearly violates the Common Benefits Clause of the Vermont Constitution, the United States Constitution and Vermont law. On its face, the Solar Siting Map created by the Siting Committee treats similarly situated properties differently by arbitrarily selecting some parcels as "Preferred Sites" for solar development and others as "unsuitable" without justification and despite the fact that current zoning laws allow for the development of renewable facilities on such sites. Moreover, there is ample evidence that the Siting Committee engaged in reverse spot zoning and targeted certain of the Plaintiffs' properties for discriminatory treatment.

156.    The last factor that this Court is to consider with respect to the granting of the requested injunction is the public interest. This factor weighs heavily in favor of the Plaintiffs as the public has a strong interest in (i) seeing the Energy Amendment conform to the Municipal Standards, (ii) seeing the Municipal Standards enforced as written, (iii) having similarly situated properties treated similarly with respect to the potential development of renewable energy systems, (iv) encouraging renewable energy development rather than inhibiting it through exclusionary zoning laws and (v) enforcing the procedures set forth in §4384(e)(4).

157.    For the reasons stated herein, Plaintiffs ask this Court to enjoin the BCRC from taking any action towards certifying the Energy Amendment or the screening ordinance under 24 V.S.A. §4352.

## COUNT VIII

## VIII.   DAMAGES CAUSED BY DEFENDANTS' UNLAWFUL ACTIONS.

158.    Plaintiffs repeat and re-allege the allegations contained in each and every

preceding paragraph of this Complaint.

159.   Starting in 2015, the Town opposed both the Chelsea and Apple Hill solar projects based upon false information, and on no legitimate regulatory grounds.  Rather the Town opposed the projects based upon political pressure from NIMBY neighbors violating Plaintiffs' due process and equal protection rights under the United States and Vermont Constitutions.

160.   Making matters worse, at the same time, the Town supported other similarly situated solar projects in Bennington laying bare the unconstitutional discriminatory actions of the Town against Plaintiffs.  While opposing the Chelsea and Apple Hill solar projects, which would be fully screened from neighbors and the public, the Town supported other commercial scale solar projects in the Town, including in the Bennington RCON zone, that were in plain view from all public and neighboring views, including in what the Town calls a scenic gateway.

161.   For example, the Bennington Paper Mill solar project is plainly visible from public roads and neighboring properties.  *See* **Exhibit 16**, which are photographs of the Paper Mill solar project. Another example is the Town's recently approved Route 7 commercial net-meter solar project sited and visible in what the Town considers a scenic gateway.[3] *See* **Exhibit 17**. The examples of the Paper Mill and Route 7 solar projects show quite clearly the benchmark needed to satisfy the Town's screening ordinance.  The Chelsea, Apple Hill and Battle Creek solar farms proposed screening that far exceeded the screening requirement shown by the Paper Mill and Route 7 projects, but the Town still was not satisfied, showing that its screening "standards" are not standards at all but merely optional ad-hoc criteria that can be applied at will by the political elite of the Town, further proving the Town's actions, and opposition, are a

---

[3] *See, ER Bennington Solar I, LLC*, 2016 Vt. PUC LEXIS 570 (October 19, 2016).

violation of Plaintiffs' constitutional rights.

162.    As a result of the defendants' unconstitutional and unlawful actions, the Chelsea and Apple Hill solar projects have been delayed by years, and the Battle Creek solar project has been delayed, resulting in millions of dollars of lost revenue to Plaintiffs, and resulting in Plaintiffs incurring additional costs.

## COUNT IX

## IX.    DECLARATORY JUDGMENT THAT THE TOWN'S SCREENING ORDINANCE VIOLATES 24 V.S.A. § 4414(15).

163.    Plaintiffs repeat and re-allege the allegations contained in each and every preceding paragraph of this Complaint.

164.    24 V.S.A. § 4414(15) allows a municipality to enact a "freestanding bylaw to establish screening requirements that shall apply to a ground-mounted plant that generates electricity from solar energy." It also allows the municipality to "make recommendations to the Public Utility Commission applying the bylaw."

165.    24 V.S.A. § 4414(15)(B) defines "screening" as "reasonable aesthetic mitigation measures to harmonize a facility with its surroundings and includes landscaping, vegetation, fencing, and topographic features."

166.    However, a municipal screening bylaw or ordinance is only valid if it is not "more restrictive than screening requirements applied to commercial development in the municipality." *See*, 24 V.S.A. § 4414(15)(A).

167.    Under 30 V.S.A. § 248(b)(1)(B) the ground-mounted solar electric generation facility must comply with both the screening bylaw and "the recommendation of a municipality applying such a bylaw."

168.    The Town's Screening Ordinance does not comply with 24 V.S.A. § 4414(15)

because it is more restrictive than screening requirements applied to commercial development in the municipality.

169.   The Town's by-laws do not contain a similar screening requirement for commercial development.

170.   For the reasons stated herein, Plaintiffs ask for a declaratory judgment that the Town's Screening Ordinance violates 24 V.S.A. § 4414(15).

## COUNT VII

## X.   THE TOWN'S SCREENING ORDINANCE AND 24 V.S.A. §4414(15) VIOLATE PLAINTIFFS' DUE PROCESS, EQUAL PROTECTION AND FREE SPEECH RIGHTS.

171.   Plaintiffs repeat and re-allege the allegations contained in each and every preceding paragraph of this Complaint.

172.   The Town's screening ordinance violates Plaintiffs' due process, equal protection and free speech rights.

173.   *First,* 24 V.S.A. § 4414(15) violates Plaintiffs' equal protection and free speech rights because the authorization for a screening ordinance does not apply to all solar facilities, such as those on a roof, any other electric facility, such as a wind facility, a biomass facility or a natural gas plant, or any other commercial development or other development. The law singles out only one type of use for restrictive treatment.

174.   A solar facility is by its very nature an expression of speech. It is a statement against the political deniers of climate change and the destruction that comes from fossil fuel use. The requirement that an owner essentially hide or screen its speech violates its free speech rights.

175.   *Second*, the Town's screening ordinance is unconstitutionally vague and standard-less. In a rule 30(b)(6) deposition in PUC docket 8454, the Town admitted that the level of

39

screening needed to meet the Town's screening ordinance is whatever the Select Board says it is.

176.   *Third,* both the Paper Mill solar project and the Town's Route 7 net-metered project met the Town's screening ordinance.  *See* **Exhibits 16-17** for photos of those projects. Moreover the Town's Route 7 solar project is in what the Town designates as a scenic gateway. When it comes to Plaintiffs' solar farms, however, the Town insists on a level of screening far far in excess of what it has for other solar projects which are clearly visible from public vantage points.

177.   For the reasons stated herein, Plaintiffs ask for a declaratory judgment that the Town's Screening Ordinance and 24 V.S.A. §4414(15) violate Plaintiffs' due process, equal protection and free speech rights.

## COUNT XI

**XI.   THE REQUIREMENT THAT A SOLAR FACILITY ADHERE TO THE RECOMMENDATION OF A MUNICIPALITY VIOLATES PLAINTIFFS' DUE PROCESS, EQUAL PROTECTION AND FREE SPEECH RIGHTS AND VIOLATES THE CONSTITUTIONAL SEPARATION OF POWERS.**

178.   Plaintiffs repeat and re-allege the allegations contained in each and every preceding paragraph of this Complaint.

179.   Section 30 V.S.A. § 248(b)(1)(B) requires that a ground-mounted solar electric generation facility must comply with both the screening ordinace and "the recommendation of a municipality applying such a bylaw or ordinance."

180.   The Plaintiffs' due process rights are violated because a municipality is not required to afford the owner of a solar facility any due process prior to making recommendations that involve Plaintiffs' property rights, but the PUC is required to follow the municipality's recommendation.   The Plaintiffs' due process rights are also violated because there is no standard governing a municipality's recommendation, turning the entire section 248 permitting

process into relying on the standard-less criteria imposed on an ad hoc basis by the municipality's select board.

181.    The Plaintiffs' equal protection rights are violated in two ways.  *First*, the restrictions do not apply to all solar facilities, such as on a roof, any other electric facility, such as a wind facility, a biomass facility or a natural gas plant, or any other commercial development or other development.  The law singles out only one type of use for restrictive treatment. *Second*, the law prefers municipal speech over the speech of owners of plants by providing preference for the recommendations of a municipality in a proceeding that adjudicates substantial property rights of the Plaintiffs.

182.    The Plaintiffs' free speech rights are violated in three ways.  *First*, a solar facility is by its very nature an expression of speech.  It is a statement against the political deniers of climate change and the destruction that comes from fossil fuel use.  The requirement that an owner essentially conform to a municipality's standard-less instructions violates its free speech rights.  *Second*, the law discriminates on where the solar modules are placed.  The law does not permit any restriction on solar modules on the roof of a house, whereas it regulates the same modules if placed on the ground.  *Third*, the recommendation of a municipality applying such a bylaw or ordinance is speech.  The law violates the Plaintiffs' rights by giving preference to the Town's speech in deciding whether land development rights of the Plaintiffs should be taken away or restricted.

183.    30 V.S.A. § 248(b)(1)(B) violates the separation of powers clause because it transfers to the municipality the power to say what the law is by requiring the PUC to follow the municipality's interpretation of its ordinance. The judiciary's constitutional role is to exercise its independent judgment "to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177

(1803). A rule of deference that prevents judges from exercising that independent judgment unconstitutionally transfers judicial power to the Executive Branch. *See Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1217 (2015) (Thomas, J., concurring in the judgment). What is more, such a rule erodes the judiciary's critical role in checking the excesses of the Executive Branch. *Id.* at 1220-21; *see also* John F. Manning, *Constitutional Structure and Judicial Deference to Agency Interpretations of Agency Rules*, 96 Colum. L. Rev. 612, 655-85 (1996). Making matters still worse from the standpoint of separation-of-powers, such deference effectively combines in a single agency (here, the Select board) both the power to prescribe and the power to interpret—yet "a fundamental principle of separation of powers . . . [is] that the power to write a law and the power to interpret it cannot rest in the same hands." *Decker v. Northwest Environmental Defense Center*, 133 S. Ct. 1326, 1341 (2013) (Scalia, J., concurring in part and dissenting in part).

184.    For the reasons stated herein, Plaintiffs ask for a declaratory judgment that the requirement that a solar facility adhere to the recommendation of a municipality violates Plaintiffs' due process, equal protection and free speech rights and violates the constitutional separation of powers.

## COUNT XII

## XII.   THE DEFENDANTS' ACTIONS AND THE ENERGY AMENDMENT VIOLATE THE PUBLIC TRUST DOCTRINE.

185.    Plaintiffs repeat and re-allege the allegations contained in each and every preceding paragraph of this Complaint.

186.    For decades, the Town has known that carbon dioxide ("CO2") pollution from burning fossil fuels was causing global warming and dangerous climate change, and that continuing to burn fossil fuels and purchase electricity from such energy sources would

destabilize the climate system on which present and future generations of our nation depend for their well-being and survival, and the economy depends. Defendants know of the unusually dangerous risks of harm to human life, liberty, and property that would be caused by continued fossil fuel burning.

187. Instead, of acting to combat such harm, defendants have willfully ignored this impending harm and by their actions attempted to stifle actions such as solar development.

188. Rather than implement a rational course of effective action to phase out carbon pollution, defendants have continued to permit and subsidize fossil fuel extraction, development and consumption through their active opposition against the Plaintiffs Chelsea, Apple Hill and Battle Creek solar projects for no legitimate regulatory basis, and by their attempt to further limit solar energy development through changes to the Town Plan including the Energy Amendment.

189. Government bears a higher degree of responsibility more than any other individual or entity continuing the climate destroying policies, and in the case of the defendants, using governmental authority to stifle development of solar energy is simply yet another continuation of climate destroying policies.

190. Plaintiffs are beneficiaries of rights under the public trust doctrine. These rights include the protection of the right to enjoy property and the rights of present and future generations to vital natural resources such as the air (atmosphere), water, and a stable climate. The overarching public trust resource is our country's life-sustaining and property sustaining climate system, which encompasses our atmosphere waters, oceans, and biosphere. Defendants must exercise their governmental power consistent with protecting those trust resources.

191. As sovereign trustees, defendants have a duty to refrain from actions which further impair these essential natural resources and which inhibit or interfere with action of

Plaintiffs and others to combat the destructive effects of fossil fuel electric generation. The affirmative aggregate acts of defendants in opposing Plaintiffs' solar development and stifling solar development on a broad scale do the exact opposite thereby harming Plaintiffs and the public.

192.    As sovereign trustees, the affirmative aggregate acts of defendants are unconstitutional and in contravention of their duty to hold the atmosphere and other public trust resources in trust.

193.    For the reasons stated herein, Plaintiffs ask for a declaratory judgment that the defendants' actions and the Energy Amendment violate the public trust doctrine.

## COUNT XIII

## XIII.  ATTEMPTED MONOPOLIZATION IN VIOLATION OF THE SHERMAN ANTITRUST ACT (15 U.S.C. § 2).

194.    Plaintiffs repeat and re-allege the allegations contained in each and every preceding paragraph of this Complaint.

195.    The Town has a simple strategy to destroy solar competition in Bennington and rest control over the siting of solar in Bennington.  It plans to achieve that goal by designating its own property as preferred for solar while designating almost all other property in Bennington as unsuitable.  In an attempt to mask its objectives it has also designated some other properties as preferred that are either owned by politically favored property owners or almost completely undevelopable.

196.    The relevant geographic market is the Town.  At a minimum, the relevant product market is the provision of electric solar power to end-use residential, governmental, and businesses consumers (hereafter the "retail market"), the net-meter group market and the wholesale market. In the retail market including the net-meter group market, power may be

provided by various sources, such as through the outright sale of power, or by the lease or sale of distributed systems through which a customer generates power on his or her own property.

197.    Plaintiffs would directly compete with Bennington in those markets because Plaintiffs offer equipment and services that provide electricity—specifically solar-generated electricity—to various customers. By using Plaintiffs' equipment and services, customers would reduce the need to use the Town's designated preferred solar facilities.

198.    The Energy Amendment seeks to position the Town as the monopoly power in the solar electricity market within the geographic market, owning more than 50% of the market.

199.    Making matters worse, is the Town's likely continued governmental power that it could exercise against the few remaining preferred sites for solar.    Under 30 V.S.A. 248(b)(1)(C), the PUC must provide substantial deference to the Town's position and the PUC is not permitted to examine the validity of the plan on which the Town's position is based.

200.    The Town's actions and Energy Amendment constitute an unlawful attempt to monopolize in violation of section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2.

201.    Specifically, the Town's actions and Energy Amendment constitute a willful and intentional attempt to monopolize the market for larger scale net metering projects, and small scale wholesale projects in Bennington by excluding competition from distributed solar.

202.    The Town's attempt to monopolize has a dangerous probability of success.

203.    The Town's attempt to monopolize is likely to continue if not enjoined.

## COUNT XIV

## XIV.    UNREASONABLE RESTRAINT OF TRADE IN VIOLATION OF THE SHERMAN ANTITRUST ACT (15 U.S.C. § 1).

204.    Plaintiffs repeat and re-allege the allegations contained in each and every preceding paragraph of this Complaint.

205.    The Energy Amendment constitutes an agreement that unreasonably restrains trade in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

206.    The Energy Amendment has and will continue to have anticompetitive effects.

207.    The Energy Amendment unlawfully insulates the Town from competition and eliminates competition for the handful of property owners designated by the Energy Amendment, excluding all others from the greater than 150kw solar market, including by actually foreclosing competition in the market, preventing entry, thereby allowing the Town and the other handful of property owners to raise prices, harm the competitive process, raise barriers to entry and expansion, and retard innovation.

208.    The Energy Amendment is not reasonably necessary to accomplish any of legitimate goal, and in any case, there would be less restrictive alternatives by which the Town could reasonably achieve any legitimate regulatory goal.

209.    As a direct and foreseeable result of the Town's willful imposition of the Energy Amendment, the Plaintiffs will suffer damages in an amount to be proved at trial.

210.    The Town's imposition and enforcement of the Energy Amendment and other similar policies is likely to continue if not enjoined.

## COUNT XV

### XV.    EXCLUSIVE DEALING IN VIOLATION OF THE CLAYTON ANTITRUST ACT (15 U.S.C. § 14)

211.    Plaintiffs repeat and re-allege the allegations contained in each and every preceding paragraph of this Complaint.

212.    Electricity is a commodity subject to section 3 of the Clayton Antitrust Act, 169.15 U.S.C. § 14.

213.    The Energy Amendment constitutes an exclusivity arrangement that unreasonably restrains trade in violation of section 3 of the Clayton Antitrust Act, 15 U.S.C. § 14.

214.    The Town's Energy Amendment, 2016 changes to the Town Plan and discriminatory policies have and will continue to have anticompetitive effects. They unlawfully insulate the Town and other select property owners from competition, including by actually foreclosing competition in the market and preventing entry, thereby allowing the Town and other select property owners to raise prices, harm the competitive process, raise barriers to entry and expansion, and retard innovation.

215.    The Energy Amendment's exclusivity arrangement is not reasonably necessary to accomplish any legitimate regulatory or business goal, and in any case, there would be less restrictive alternatives by which the Town could reasonably achieve any legitimate regulatory goal.

216.    As a direct and foreseeable result of the Town's willful exclusivity arrangement, the Plaintiffs will suffer damages in an amount to be proved at trial.

217.    The Town's imposition and enforcement of the Energy Amendment and other similar policies is likely to continue if not enjoined.

## COUNT XVI

## XVI.   ATTEMPTED MONOPOLIZATION IN VIOLATION OF THE VERMONT CONSUMER PROTECTION ACT (9 V.S.A. CH. 63).

218.    Plaintiffs repeat and re-allege the allegations contained in each and every preceding paragraph of this Complaint.

219.    The Energy Amendment constitutes an unlawful attempt to monopolize trade or commerce in violation of 9 V.S.A. §2453 *et seq*.

220.    Specifically, the Energy Amendment constitutes a willful and intentional attempt to monopolize the retail market, by excluding competition from distributed solar.

221.    The Town's attempt to monopolize has a dangerous probability of success.

222.    The Town's conduct constitutes a violation of 9 V.S.A. §2453.

223.    As a direct and foreseeable result of the Town's attempt to monopolize, Plaintiffs will suffer damages in an amount to be proved at trial.

224.    The Town's attempt to monopolize is likely to continue if not enjoined.

## COUNT XVII

## XVII. UNREASONABLE RESTRAINT OF TRADE IN VIOLATION OF THE VERMONT CONSUMER PROTECTION ACT.

225.    Plaintiffs repeat and re-allege the allegations contained in each and every preceding paragraph of this Complaint.

226.    The Energy Amendment constitutes an agreement that unreasonably restrains trade within Vermont in violation of 9 V.S.A. §2453.

227.    The Energy Amendment has and will continue to have anticompetitive effects. It unlawfully insulates the Town from competition and excludes distributed solar companies from the retail market, thereby allowing the Town to raise prices, harm the competitive process, raise barriers to entry and expansion, and retard innovation.

228.    The Energy Amendment is not reasonably necessary to accomplish any of Vermont's energy goals. Any potential benefit is outweighed by anticompetitive harm, and there are less restrictive alternatives by which the Town could reasonably achieve any legitimate regulatory goal.

229.    The Town's imposition and enforcement of this agreement is likely to continue if

not enjoined.

## COUNT XVIII

### XVIII. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE.

230.   Plaintiffs repeat and re-allege the allegations contained in each and every preceding paragraph of this Complaint.

231.   Plaintiffs have and have had an expectancy in continuing advantageous economic relationships with current and prospective customers in the Town's service area, including VEPP Inc. and as a net-meter supplier to retail customers of Green Mountain Power Corporation.

232.   The defendants had knowledge of these economic relationships and intended to interfere with and disrupt them by wrongfully designing, announcing, and imposing the Screening Ordinance, the 2016 Town Plan anti-solar changes, the Energy Amendment and provisions regarding development in the RCON zone, applying those in a discriminatory manner, and in pursuing its opposition to Plaintiffs' projects for no legitimate regulatory reason have harmed the relationships' economic value.

233.   The defendants' intentional interference was improper in both motive and means.

234.   Any interests that the defendants purport to advance through their intentional interference are pretextual.

235.   As a direct and foreseeable result of the defendants' intentional interference, Plaintiffs have suffered damages in an amount to be proved at trial.

## COUNT XIX

### XIX.   INTENTIONAL INTERFERENCE WITH CONTRACT.

236.   Plaintiffs repeat and re-allege the allegations contained in each and every

49

preceding paragraph of this Complaint.

237.    Plaintiffs have entered into contractual relationships with VEPP Inc. for a 25 year sale of the energy and renewable energy attributes from Plaintiffs' Chelsea Solar farm, Apple Hill Solar farm and the Battle Creek Solar farm.

238.    The defendants had knowledge of these contractual relationships and intended to interfere with and disrupt them by wrongfully providing and acting on false information in opposing the Chelsea and Apple Hill projects, taking positions that were overtly discriminatory and targeting Plaintiffs for disparate treatment for no legitimate regulatory reason in the case of all three solar farms, and designing, announcing, and imposing Screening Ordinance, the 2016 Town Plan anti-solar changes, the Energy Amendment, and provisions regarding development in the RCON zone in a way intended to destroy the relationships' economic value.

239.    The defendants' intentional interference was improper in both motive and means.

240.    Any interests that the defendants purport to advance through their intentional interference are pretextual.

241.    As a direct and foreseeable result of the defendants' intentional interference, Plaintiffs has suffered damages in an amount to be proved at trial.

**COUNT XX**

**XX.    CIVIL CONSPIRACY**

242.    Plaintiffs repeat and re-allege the allegations contained in each and every preceding paragraph of this Complaint.

243.    Defendants have entered in a civil conspiracy to wrongly injure Plaintiffs, and to create unconstitutional and unlawful restrictions against development of solar energy on Plaintiffs' properties.

244. Defendants have tortiously targeted Plaintiffs based upon false information, discriminatory treatment and not for any legitimate regulatory reason.

245. Each of the defendants had knowledge of the tortious and unlawful conduct and provided substantial assistance in the achievement of the primary tortious conduct.

246. As a direct and foreseeable result of the defendants' tortious and unlawful conduct, Plaintiffs have suffered damages in an amount to be proved at trial.

## COUNT XXI

### XXI. DAMAGES UNDER 42 U.S.C. §1983 AND FOR VIOLATION OF CONSTITUTIONAL RIGHTS UNDER THE VERMONT CONSTITUTION.

247. Plaintiffs repeat and re-allege the allegations contained in each and every preceding paragraph of this Complaint.

248. Each of the Energy Amendment, the 2016 Town Plan anti-solar changes, the Screening Ordinance and the development restrictions in the RCON zone is an unconstitutional abridgment on its face, and as applied or threatened to be applied, of the Plaintiffs' affirmative rights to freedom of speech under the United States Constitution, First and Fourteenth Amendments and the Vermont Constitution.

249. Each of the Energy Amendment, the 2016 Town Plan anti-solar changes, the Screening Ordinance and the development restrictions in the RCON zone, on its face and as applied or threatened to be applied, is an unconstitutionally overbroad restriction on expressive activity.

250. Each of the Energy Amendment, the 2016 Town Plan anti-solar changes, the Screening Ordinance and the development restrictions in the RCON zone, on its face and as applied or threatened to be applied, is an unconstitutionally vague restriction on expressive activity.

251.    Each of the Energy Amendment, the 2016 Town Plan anti-solar changes, the Screening Ordinance and the development restrictions in the RCON zone, on its face and as applied or threatened to be applied, is a content-based and viewpoint-based restriction on speech.

252.    Each of the Energy Amendment, the 2016 Town Plan anti-solar changes, the Screening Ordinance and the development restrictions in the RCON zone, on its face and as applied or threatened to be applied, does not serve a significant governmental interest.

253.    Each of the Energy Amendment, the 2016 Town Plan anti-solar changes, the Screening Ordinance and the development restrictions in the RCON zone, on its face and as applied or threatened to be applied, is neither narrowly tailored nor the least restrictive means to accomplish any permissible governmental purpose sought to be served by the legislation.

254.    Each of the Energy Amendment, the 2016 Town Plan anti-solar changes, the Screening Ordinance and the development restrictions in the RCON zone is unconstitutionally vague, on its face and as applied or threatened to be applied, in violation of the due process guarantee of the Vermont Constitution and the Fourteenth Amendment to the United States Constitution.

255.    The Energy Amendment, the 2016 Town Plan anti-solar changes, the Screening Ordinance and the development restrictions in the RCON zone are irrational and unreasonable enactments, imposing unjustifiable restrictions on the exercise of protected constitutional rights.

256.    Because the Energy Amendment, the 2016 Town Plan anti-solar changes, the Screening Ordinance and the development restrictions in the RCON zone are irrational and unreasonable, their application violates the due process guarantee of the Vermont Constitution and the Fourteenth Amendment to the United States Constitution.

257.    Each of the Energy Amendment, the 2016 Town Plan anti-solar changes, the

Screening Ordinance and the development restrictions in the RCON zone, on its face and as applied or threatened to be applied, violates the Common Benefits Clause of the Vermont Constitution and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by denying Plaintiffs free speech rights allowed to others in similar situations and other protections of state and federal law, imposing on Plaintiffs different standards as compared to others in similar situations, and taking away Plaintiffs' property rights as compared to others in similar situations.

258.    The Town's actions in opposing the Chelsea Solar farm, the Apple Hill Solar farm, and asking for unreasonable screening for the Battle Creek Solar farm, and the Siting Committee's targeting Plaintiffs have violated the Plaintiffs' constitutional rights to due process and equal protection.

259.    As a result of the Energy Amendment, the Solar Ordinance and the Town's actions, the Plaintiffs' have suffered damages to be proven at trial.

260.    An injunction is also necessary to prevent the defendants unlawful and unconstitutional conduct from continuing.

## COUNT XXII

## XXII. DECLARATION THAT 24 V.S.A. §4352(b) IS AN UNCONSTITUTIONAL DELEGATION OF LEGISLATIVE POWER AND VIOLATES THE CONSTITUTIONAL LIMITS ON SEPARATION OF POWERS.

261.    Plaintiffs repeat and re-allege the allegations contained in each and every preceding paragraph of this Complaint.

262.    The Vermont Constitution ch. II, § 2, provides that the "Supreme Legislative power shall be exercised by a Senate and a House of Representatives."

263.    The Vermont Constitution ch. II, § 3, provides that the "Supreme Executive

53

power shall be exercised by a Governor, or in the Governor's absence, a Lieutenant-Governor."

264.   Within certain parameters the Legislature may constitutionally delegate legislative authority to the executive branch.

265.   24 V.S.A. §4352(b), however, constitutes a delegation to the executive branch, i.e., the DPS, which then has the power to re-delegate legislative power to a county commission, here the BCRC, if the DPS approves the BCRC as competent enough to be given the re-delgation of legislative authority.

266.   The Legislature cannot delegate to the executive the power to then delegate legislative power back to a county commission.  While the Legislature has the power to delegate authority to the executive subject to standards and an opportunity for judicial review, it cannot delegate the power to delegate legislative authority to the executive branch, which is what 24 V.S.A. §4352(b) does.

267.   For the reasons stated herein, Plaintiffs ask for a declaratory judgment that 24 V.S.A. §4352(b) is an unconstitutional delegation of legislative power and violates the constitutional limits on separation of powers.

## COUNT XXIII

**XXIII. DECLARATION THAT THE CHELSEA SOLAR FARM IS NOT SUBJECT TO THE TOWN'S SCREENING ORDINANCE OR ANY CHANGES IN THE TOWN PLAN PASSED AFTER THE DATE OF THE INITIAL APPLICATION TO THE PUC.**

268.   Plaintiffs repeat and re-allege the allegations contained in each and every preceding paragraph of this Complaint.

269.   Plaintiff Chelsea Solar filed its initial section 248 petition with the PUC in 2014 prior to the enactment of the Solar Ordinance and the changes in the Town Plan restricting solar

54

development, such as the restriction on solar farms on 10 acres or more.

270.    Chelsea's original petition was validly brought and pursued in good faith but was denied by the PUC because of the unconstitutional and irrational actions of the Town in opposing the Chelsea Solar Farm.

271.    The PUC denied the original Chelsea Solar petition on grounds that development of solar farms in the RCON zone was prohibited by the Town Plan, a basis the Town has subsequently conceded was meritless.

272.    The Town's opposition to the Chelsea Solar farm on unconstitutional and meritless grounds and false information was bad enough.  Making matters worse was the continued opposition after the PUC issued its initial denial but before the PUC's reconsideration order, because the Town knew the PUC's basis for the denial was a meritless application of the Town Plan.

273.    Had the Town come clean during the rehearing process, the section 248 certificate of public good would have been issued by the PUC.

274.    The Town's failure to speak was an unconstitutional exercise of governmental power merely to appease the NIMBY neighbors and intended to harm Plaintiffs.

275.    Chelsea Solar appealed the PUC's denial to the Vermont Supreme Court and the PUC invited Chelsea Solar to submit a new section 248 petition, which Chelsea Solar did in November 2017.

276.    It would be inequitable and a further violation of Plaintiffs' constitutional rights to reward the Town for its unconstitutional and tortious action by making the current Chelsea Solar section 248 petition subject to the Town's since enacted anti-solar restrictions.

277.    For the reasons stated herein, Plaintiffs ask for a declaratory judgment that the

Chelsea Solar Farm is not subject to the Town's Screening Ordinance or any changes in the Town Plan passed after the date of the initial application to the PUC.

## COUNT XXIV

### XXIV. DECLARATION THAT THE BENNINGTON TOWN PLAN'S RESTRICTIONS ON SOLAR FARMS ARE UNCONSTITUTIONAL AND VIOLATE 24 V.S.A. §4413(g)(2).

278.   Plaintiffs repeat and re-allege the allegations contained in each and every preceding paragraph of this Complaint.

279.   The Town Plan contains restrictions on solar farm development that are unconstitutionally vague, irrational and serve no government purpose.

280.   The Town Plan provides that "[e]xcept for projects located on preferred sites, solar facilities larger than 10 acres, individually or cumulatively, cannot be adequately screened or mitigated to blend into the municipality's landscape and are, therefore, explicitly prohibited."

281.   There are no standards to determine whether a solar farm is larger than 10 acres, making the determination unconstitutionally vague, ambiguous and standard-less.

282.   The 10-acre rule applies to solar only and no other kind of development in Bennington. It is unconstitutionally discriminatory on its face.   It also violates 24 V.S.A. §4413(g)(2) which provides a municipal bylaw may not "[p]rohibit or have the effect of prohibiting the installation of solar collectors … or other energy devices based on renewable resources." As applied, the Town Plan and By-laws would prohibit and have the effect of prohibiting the installation of a solar farm if it exceeded the 10-acre provision, which the Town believes is the case with the Chelsea Solar Farm.

283.   Further, the Town Plan restricts development in the RCON zone "in prominently visible locations on hillsides", but the Town Plan gives no standards as to what constitutes a

hillside or what constitutes "prominently visible", making the restriction unconstitutionally vague, ambiguous and standard-less.

284.     The Town Plan further restricts development in the RCON zone by stating that development "must minimize clearing of natural vegetation." But there is no clear guidance as to what the requirements are rendering the application vague, standard-less and subject to the political whims of the Town's administration.

285.     For the reasons stated herein, Plaintiffs ask for a declaratory judgment that the Bennington Town Plan's restrictions on solar farms are unconstitutional and violate 24 V.S.A. §4413(g)(2).

## COUNT XXV

### XXV. DECLARATION THAT THE SETBACKS IN 30 V.S.A. 248(s)(1) ARE UNCONSTITUTIONAL ON THEIR FACE AND AS APPLIED TO PLAINTIFFS.

286.     Plaintiffs repeat and re-allege the allegations contained in each and every preceding paragraph of this Complaint.

287.     30 V.S.A. §248(s)(1) provides for a minimum 50-foot setback for ground-mounted solar facilities larger than 150kw, even if the standard setback for the applicable zoning rules provide for a smaller setback.

288.     For example, the standard setback for the industrially zoned Battle Creek Solar Farm parcel is 10 feet. That means that an industrial buildings and facilities of all sizes could be built to within 10-feet of an adjoining parcel.

289.     Ground-mounted solar projects that are not greater than 15kw have not minimum setback. *See* 30 V.S.A. §248(s)(2).

290.     The setback for ground-mounted solar violates the Plaintiffs rights under the Common Benefits Clause, due process and the public trust doctrine.

291.    The setbacks discriminate based upon the size of a solar generating facility. Discrimination against commercial development based upon its size is unconstitutional. *See, State v. Ludlow Supermarkets, Inc.*, 141 Vt. 261 (1982).

292.    The Vermont Supreme Court has declared that Article 7 "only allows the statutory classifications . . . if a case of necessity can be established overriding the prohibition of Article 7 by reference to the "'common benefit, protection, and security of the people.'" *Id.* at 268.

293.    The setbacks cannot be justified by any necessity. Indeed the mandatory setbacks harm the common benefit and the good of the state by reducing the amount of renewable energy that can be produced at a given site, thus resulting in increased fossil fuel use and the resulting climate, environmental and health adverse effects from fossil fuels.

294.    Applying this test, the setbacks disparate treatment of large and small businesses and its singling out solar fails to withstand constitutional scrutiny.

295.    Further, there is no necessity and certainly no legitimate regulatory reason for discriminating against ground-mounted solar facilities in an industrial zone when industrial buildings and facilities of all sizes could be built to within 10-feet of an adjoining parcel.

296.    On their face and as applied to Plaintiffs, the setback provisions are unconstitutional.

297.    For the reasons stated herein, Plaintiffs ask for a declaratory judgment that the setbacks in 30 V.S.A. 248(s)(1) are unconstitutional on their face and as applied to Plaintiffs.

## COUNT XXVI

**XXVI. THE TOWN'S FAILURE TO CONSENT TO A REDUCED SETBACK VIOLATES PLAINTIFFS CONSTITUTIONAL RIGHTS AND THE PUBLIC TRUST DOCTRINE.**

298.    Plaintiffs repeat and re-allege the allegations contained in each and every

preceding paragraph of this Complaint.

299.  30 V.S.A. §248(s)(3)(B) permits a setback smaller than the 50-foot setback designated by 30 V.S.A. §248(s)(1)(B)(i) if the municipal legislative body, and each owner of property adjoining the smaller setback consents.

300.  Plaintiffs requested that the Select Board agree to a 10-foot setback for the Battle Creek Solar Farm because, among other reasons, a 10-foot setback applies to every other use for the Battle Creek Solar Farm site, a smaller setback would allow for increased renewable energy production (thus reducing fossil fuel use), and the adjoining land is a railroad corridor or industrial uses.

301.  The Town refused to consent.

302.  The Town's refusal to consent was not based upon any legitimate regulatory basis or necessity.

303.  The Town's refusal results in more fossil fuel use exacerbating the adverse environmental, climate and health effects from fossil fuel.

304.  The Town's arbitrary and capricious refusal is unconstitutionally discriminatory because the Town in its bylaws agrees to a 10-foot setback for every use in the industrial zone. The Town.

305.  The Town's arbitrary and capricious refusal violates the public trust doctrine because it increases the fossil fuel use exacerbating the adverse environmental, climate and health effects from fossil fuel.

306.  For the reasons stated herein, Plaintiffs ask for a declaratory judgment that Town's failure to consent to a reduced setback violates Plaintiffs' constitutional rights and the public trust doctrine.

307.   As a direct and foreseeable result of the Town's unlawful failure to consent to a reduced setback, Plaintiffs have suffered damages in an amount to be proved at trial.

## . **RELIEF REQUESTED**

1.   For the reasons stated, Plaintiffs respectfully request the following relief:

   a.   Grant judgment in favor of Plaintiffs and against defendants;

   b.   Issue the declarations requested herein by Plaintiffs;

   c.   Grant all appropriate injunctive relief;

   d.   Award Plaintiffs an appropriate amount in monetary damages as determined at trial, including pre- and post-judgment interest;

   e.   Award Plaintiffs treble damages as appropriate in an amount to be proved at trial;

   f.   Award Plaintiffs attorneys' fees and the costs of bringing this action; and

   g.   Grant Plaintiffs such other relief as is just and appropriate

Dated: January 24, 2018                    Respectfully submitted,

Michael Melone
Bar No. 5455
Allco Renewable Energy Limited
1745 Broadway, 17th floor
New York, NY 10019
Phone:  (212) 681-1120
Email: mjmelone@AllcoUS.com

Thomas Melone
Bar No. 5456
Allco Renewable Energy Limited
1745 Broadway, 17th floor
New York, NY 10019
Phone:  (212) 681-1120
Email: Thomas.Melone@AllcoUS.com

*Attorneys for Plaintiffs*